IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANGELA DIANNE SPARKS                                    PLAINTIFF

v.                                    Civil Action No. 3:14-cv-120-TSL-JCG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security                  DEFENDANT

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Plaintiff Angela Dianne Sparks' Motion [7] for Summary Judgment.  Pursuant to 42 U.S.C. § 405(g), Sparks seeks review of an administrative decision by Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying Sparks' claim for a period of disability and disability insurance benefits.  R. [5] 13-22.  The Commissioner has responded to Sparks' Motion for Summary Judgment by filing a Motion [11] for an Order Affirming the Commissioner's Decision.  Sparks has filed no response to the Commissioner's Motion.  The undersigned submits this Report and Recommendations to the United States District Judge and recommends that Sparks' Motion [7] be denied and the Commissioner's [11] granted.

## I. BACKGROUND

A.    Administrative Proceedings

On March 31, 2011, Sparks protectively filed, and on April 8, 2011, completed an application with the Social Security Administration for a period of disability and disability insurance benefits under Title II of the Social Security Act.  Sparks alleged an onset of disability beginning January 1, 2004.  Her application was

denied both initially and on reconsideration.  Sparks timely filed a request for hearing before an Administrative Law Judge ("ALJ").

The ALJ conducted a hearing on November 13, 2012, in Jackson, Mississippi. At the hearing, the ALJ allowed Sparks to amend her alleged disability onset date to April 8, 2007.  Sparks and a vocational expert ("VE") testified.  The ALJ issued a decision on November 20, 2012, concluding that Sparks was not disabled within the meaning of the Social Security Act, sections 216(i) and 223(d), from April 8, 2007, through the date last insured, December 31, 2007.

On December 12, 2013, the Appeals Council denied Sparks' request for review of the ALJ's decision, thereby rendering the ALJ's decision as the final decision of the Commissioner.  Having exhausted her administrative remedies, Sparks timely commenced the present action by Complaint filed February 12, 2014.

B.    Statement of Facts

Sparks was 50 years of age on the alleged disability onset date of April 8, 2007.  R. [5] 30.  She completed high school, one year of college, and has past work experience as a bank teller and resale business owner.  *Id.* at 46-47; Mot. [12] 2. The ALJ evaluated Sparks' claim using the five-step sequential process.

At step one, the ALJ found that Sparks was not engaged in substantial gainful activity.  At step two, the ALJ found that Sparks had the following severe impairments: depression, bipolar disorder, a personality disorder, and attention deficit hyperactivity disorder.  R. [5] at 15.  At step three, the ALJ determined that these impairments, considered singly or in combination, did not meet or medically

equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1.

At step four, the ALJ assessed Sparks' residual functional capacity ("RFC")

and found

> that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she could have understood, remembered, and carried out simple instructions.  She could have performed routine, repetitive tasks and some low-level detailed tasks and could have concentrated for two-hour periods. She could have occasionally interacted with the general public and coworkers, and she would have required non-confrontational supervision. She could have worked best independently with occasional interaction with others.  She could have adapted to occasional changes and would have missed work one day per month due to the effects of mental impairment.

R. [5] 18.

The ALJ found that Sparks was unable to perform past relevant work.  The ALJ determined, however, that through the date last insured, considering Sparks' age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Sparks could have performed. These included representative occupations such as photocopy machine operator, an assembler of small parts, and a vending machine attendant.  Accordingly, the ALJ concluded that Sparks was not disabled, as defined in sections 216(i) and 223(d) of the Social Security Act, at any time from April 8, 2007, the alleged onset date, through December 31, 2007, the date last insured.

## II. ANALYSIS

### A. Administrative Review

A review of the Commissioner's denial of benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence in the record as a whole, and (2) whether the Commissioner applied the correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  Substantial evidence must be more than a mere scintilla, but it need not be a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The Court's role is to scrutinize the entire record to ascertain whether substantial evidence supports the Commissioner's findings. *Hollis v. Bowen,* 837 F.2d 1378, 1383 (5th Cir. 1988).   The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.*  This is so, even if the Court determines that the evidence could allow for a different finding. *Strickland v. Harris,* 615 F.2d 1103, 1106 (5th Cir. 1980).

As summarized by the United States Court of Appeals for the Fifth Circuit,

> [t]he claimant has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.  20 C.F.R. § 404.1572(a) and (b).  The ALJ uses a five-step sequential process to evaluate claims of disability and decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past

relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step. Thus, the claimant must show first that she is no longer capable of performing her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding. *Id.*

*Newton v. Apfel*, 209 F.3d 448, 452–53 (5th Cir. 2000).

B.    Analysis of the Alleged Errors and Applicable Law

1.    The Credibility of Sparks' Testimony

The ALJ's decision provides "that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. [5] 19.

Sparks maintains that the ALJ failed to apply the proper legal standard to determine Sparks' credibility. Sparks submits that this is so because the ALJ's credibility determination was a "simple conclusory statement." Mot. [5] 4. Sparks cites Social Security Ruling (SSR) 96-7p, which provides that "[w]hen evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's

statement."  1996 WL 374186 (July 2, 1996).

The ALJ's decision is not conclusory.  The ALJ set forth the proper legal standard for determining the credibility of Sparks' subjective complaints, a summary of Sparks' testimony, the conclusion that Sparks' subjective complaints were not fully credible, and the record evidence supporting this conclusion.

The ALJ determined that Sparks' mental impairments resulted in moderate functional limitations.  R. [5] 19.  Sparks testified that she suffered periodically from paranoia, manic phases, impulsivity, mood swings, apathy, and had difficulty focusing, concentrating, and making decisions.  *Id.*  The ALJ explained that he credited this testimony to the extent it was corroborated by objective medical evidence.  *Id.*  The ALJ relied on the medical records documenting that upon observation, providers found Sparks to be generally cooperative, oriented, well-groomed, of average intellectual functioning, normal mood, good memory, and with intact associations.  *Id.* at 15-16, 19.  The ALJ was swayed by the medical evidence indicating that Sparks "realiz[ed] improvement in her mental impairments with the administration of prescription medication."  *Id.* at 19.

The ALJ found that Sparks' claim of "significant functional limitation throughout 2007 as a result of her mental impairments" was belied by Sparks' testimony that, during the period at issue, she managed her own resale business with the help of friends, family, and a coworker; for the most part, "did fine" interacting with the general public and "pretty good" interacting with her coworker; and managed her personal finances.  *Id.* at 15, 19, 39.  The ALJ credited most

-6-

portions of a third-party function report submitted by Sparks' friend Karen Carroll. Carroll's report provides that "claimant had no problem with personal care, prepared her own daily meals, and could do laundry, cleaning, and household chores with no encouragement. [Carroll] stated that the claimant drove a car, shopped in stores, could pay bills and handle a savings account, watched television, spent time with friends, and did not need to be reminded to go places." *Id.* at 19, 20, 134-41.

The ALJ did not find fully credible Sparks' testimony that she suffered more than minimal effects as a result of arthritis, knee pain, hypothyroidism, hypertension, headaches, and obesity. *Id.* at 16.  Sparks testified that, during the time period at issue, she could lift no more than five or ten pounds, had body aches "all over," could stand no more than thirty minutes, walk no more than "[a] couple of blocks," and "hardly go" up or down stairs. *Id.* at 20, 31, 38, 45-46.  The ALJ explained in his decision that he discounted this testimony because the objective medical evidence was unremarkable and did not corroborate the type of pain and extent of restriction alleged. *Id.* at 19.

The ALJ properly performed his function as the trier of fact and made affirmative, specific findings regarding Sparks' subjective complaints in accord with SSR 96-7p. *See Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001)(citations omitted); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994).  The ALJ's credibility determination cannot reasonably be characterized as conclusory and is entitled to considerable deference because the ALJ was present and enjoyed the

-7-

benefit of observing Sparks' person and testimony at the hearing. *Loya v. Heckler,* 707 F.2d 211, 215 (5th Cir. 1983). Even Sparks concedes that "the ALJ did identify some instances in claimant's medical records that he alleges support his position." Mot. [8] 4. A review of the record and the ALJ's decision leave no doubt that the ALJ applied the appropriate legal standard. Further, the evidence supporting his credibility determination easily exceeds "more than a mere scintilla" of evidence. *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).

   2.   The ALJ's Determination of RFC and Reliance on the VE's Testimony

   Sparks challenges the ALJ's conclusion that Sparks, through the date last insured, had a RFC to perform a full range of work at all exertional levels but with nonexertional limitations. R. [5] 18. Claimant maintains that the ALJ "failed to factor into her [sic] analysis of claimant's RFC the functional limitations imposed on claimant's ability to engage in basic work activities as a consequence of *all* of her 'severe' impairments, which include depression, bipolar disorder, personality disorder, attention deficient hyperactivity and headaches." Mot. [8] 6-7 (emphasis supplied).[1] Sparks does not specify which severe impairment or impairments she contends the ALJ did not consider. Sparks' analysis as to this alleged error is little more than a recitation of the hypotheticals posed by the ALJ, with a conclusion that the ALJ should have "chosen an RFC that included claimants need to miss more

_____

   [1]The ALJ did not find that headaches were a severe impairment. R. [5] 15. Sparks testified that she guessed she suffered headaches "because I was depressed and I felt bad." Tr. [5]. It is clear that the ALJ considered Sparks' depression when determining Sparks' RFC.

work than is allowed and would be unable to complete tasks . . . [and] perform regular and continuous work." *Id.* at 8.

The ALJ explained why he concluded that Sparks did not suffer from "significant functional limitation throughout 2007 as a result of her mental impairments." R. [5] 19. The ALJ recounted why he concluded that Sparks suffered no more than minimal effects resulting from physical impairments. *Id.* at 17, 19-20. Sparks asserts that "the ALJ erred in relying on the Vocation Expert's testimony that an employee could miss up to two days a month of work, without penalty." Mot. [8] 8.[2] The argument is inapposite because the ALJ did not find that Sparks' impairments would cause her to miss two days of work per month. The ALJ concluded that Sparks "would have missed one day per month due to the effects of mental impairment." R. [5] 18. The hypothetical posed to the VE and relied on by the ALJ concerned an individual who "would miss one day a month because of depression, primarily." R. [5] 47. It is not the Court's function to reweigh the evidence and make a finding that Sparks would have missed more than one day of work per month. *Hollis*, 837 F.2d at 1383. There is more than a scintilla of evidence in the record supporting the ALJ's conclusion that Sparks would not.

---

[2]Sparks' brief provides: "While some employers might allow their employees to miss up to two days a month or twenty-four days a year due to sickness, the average number of sick days allowed for employees throughout the United States does not total a number near twenty-four." Mot. [8] 8. Sparks relies on a National Compensation Survey. Sparks first raised the argument regarding the Survey to the Appeals Council, and the Appeals Council, having considered the argument, declined to review the ALJ's decision. R. [5] 5.

*Ripley,* 67 F.3d at 555.  Given that the ALJ posed hypotheticals to the VE that reasonably incorporated the restrictions that the ALJ recognized, the ALJ properly relied on the VE's testimony to deny Plaintiff's claim.  *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994).

### III.  RECOMMENDATIONS

For the reasons stated, the undersigned is of the opinion that the Commissioner's decision is supported by substantial evidence and in accord with correct legal standards.  It is recommended that (1) Sparks' [7] Motion for Summary Judgment be denied, and (2) the Commissioner's [11] Motion for an Order Affirming the Commissioner's Decision be granted.

### IV.  NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge.  Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects.  The District Judge need not consider frivolous, conclusive, or general objections.  A party who fails to file written objections to the proposed findings, conclusions, and recommendations within

-10-

fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Automobile Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      **SIGNED,** this the 12th day of June, 2015.

*s / John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE